No. 89-352

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

---

IN THE MATTER OF THE
MENTAL HEALTH OF E. P.

---

APPEAL FROM:  District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone,
              The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Terry L. Seiffert, Billings, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        George Schunk, Asst. Atty. General, Helena
        Harold F. Hanser, County Attorney; Terence M. Swift,
        Deputy, Billings, Montana

---

Submitted on Briefs:  Sept. 21, 1989

Decided:  February 13, 1990

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

The original opinion in this cause was dated December 20, 1989, and filed with the Clerk of the Supreme Court on that date. Following request for rehearing, we have modified that original opinion. Our original opinion in this cause dated December 20, 1989 is hereby withdrawn.

The District Court of the Thirteenth Judicial District, Yellowstone County, committed E.P. to Montana State Hospital at Warm Springs for a period of treatment and evaluation not to exceed three months. E.P. appealed that commitment. E.P. was released from Warm Springs prior to the hearing of this appeal. We affirm the commitment to Warm Springs. We review the procedure prior to commitment under the provisions of § 53-21-131, MCA, and conclude that there were serious violations of the statutory and due process protections as to E.P.

The issues are:

1. Did the District Court err in committing E.P. to Warm Springs as a seriously mentally ill person?

2. Whether E.P's statutory and due process rights were violated.

There is no factual dispute with regard to the medical condition of E.P. She is a 44 year old woman with a medical history which had been previously diagnosed on several occasions as chronic paranoid schizophrenia. On May 4, 1989, she refused the Billings Police entry for the purposes of service

2

of notice of unlawful detainer and repossession of the apartment. After the officers gained entrance and served her with the notice of eviction, an officer testified they were unable to get E.P. to understand she was being evicted. The District Court pointed out in its holdings that all of the officers concluded that E.P. did not comprehend the meaning of the eviction and insisted on attempting to return to her apartment. Because of her verbal hostility and the representation by E.P.'s son to the police that he would later arrange for commitment, they took her to the emergency admission at Deaconess Medical Center of Billings, Inc. (Center).

On the morning of May 4, the record shows that E.P. was examined by Dr. Yaney, a psychiatrist for the Center, and also by Peggy Hough, a registered nurse who works at the Center and who made a mental status examination. The record establishes that both Dr. Yaney and Ms. Hough were convinced that an "emergency situation existed" and that E.P. was seriously mentally ill and a danger to herself. E.P. was detained at the hospital.

As more fully discussed under Issue II, the Center failed to comply with the statutory requirements which provided that on May 5 the Center was to release E.P., or file findings with the county attorney who in turn was required to file a petition. While the record demonstrates that Dr. Yaney examined E.P. on May 4, 5, 8, 10 and 11, the statutory

3

provisions with regard to hearing or release were essentially disregarded. On May 10, a petition was filed with the County Attorney and in turn the County Attorney prepared a petition for commitment which was considered by the District Court on May 10. Notice was given and E.P. appeared before the court on May 11 and on May 12, with her attorney, Terry L. Seifert. On May 12, a hearing was conducted and the the District Court concluded that E.P. was beyond a reasonable doubt seriously mentally ill and ordered that E.P. should receive treatment at the Montana State Hospital, Warm Springs, Montana.

Appeal was taken in behalf of E.P. and we consider the issues which we deem essential for determination of the case.

I

Did the District Court err in committing E.P. to Warm Springs as a seriously mentally ill person?

On May 10, 1989, Dr. Yaney in behalf of the Center contacted Mary Spoja, social worker for Yellowstone County Department of Family Services, and requested her to prepare the commitment papers. Mary Spoja filed a petition with the County Attorney on May 10, along with a report from Dr. Yaney. The petition was not completely filled out, although the missing factors were noted elsewhere in the record. However, we remind all those involved that a petition must conform with § 53-21-121, MCA, and should be complete. On May 10 the County Attorney prepared and filed a petition for

4

commitment which was considered by the District Court on May 10.

The District Court gave notice on May 10 of the petition for commitment and ordered that E.P. appear before the court on May 11, 1989, and also appointed Terry L. Seifert as attorney. On May 11, the District Court set the matter for hearing on May 12; and directed that E.P. be examined by Ralph Yaney, psychiatrist; and ordered that E.P.'s son was appointed as "friend to protect her interests."

On May 12, 1989, the hearing was conducted before the District Court. E.P. was present with her attorney. Dr. Yaney and Ms. Hough both testified at the hearing as did police officers. On May 12, 1989, the District Court concluded that E.P. was seriously mentally ill and in need of further evaluation and treatment and ordered that she be committed to Montana State Hospital at Warm Springs for a period of treatment and evaluation, not to exceed three months. The District Court concluded that treatment may include medication by injection if deemed necessary by the attending physician. The order of May 12, 1989 was supplemented by findings of fact and conclusions signed by the District Court on May 22, 1989, which were incorporated into the order of commitment signed on May 12, 1989.

The findings and conclusions of the District Court stated that Dr. Yaney's original impression was that E.P. was grossly hallucinating both visually and with auditory

5

hallucinations. The court found that E.P. refused to cooperate in her examination and refused all medications; that E.P. is a chronically paranoid schizophrenic and functions only marginally at best; that E.P. has a persistent inability to deal with her life-reality situation, and that she cannot properly care for herself; that E.P. did not comprehend the meaning of the eviction and continued to insist on returning to her apartment; and that E.P. would not cooperate in the examination performed by Ms. Hough and appeared to be hallucinating. Ms. Hough testified that E.P. had severely sunburned legs and that notwithstanding that fact, E.P. stated that she would still sunbathe. Ms. Hough's opinion was that E.P. was seriously mentally ill and "totally unable to take care of herself." The District Court concluded that E.P. was in need of long term treatment for her condition and that the least restrictive environment in which she could receive the supervision and care was Montana State Hospital at Warm Springs. Last the court concluded that "respondent is beyond a reasonable doubt seriously mentally ill as defined in § 53-21-102, MCA."

The counsel for E.P. has argued that there was not sufficient evidence upon which to base the findings and conclusions of the District Court. Under M.R.Civ.P. 52(a), findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the District Court to judge the credibility of the witnesses.

6

We have carefully reviewed the transcript and the reports and other matters of record. We conclude there is substantial evidence, which could even be classed as overwhelming evidence, to support the findings and conclusions of the District Court, which culminate in the conclusion that E.P. beyond a reasonable doubt was seriously mentally ill as defined in § 53-21-102, MCA. We affirm the holdings of the District Court, including the commitment to Montana State Hospital at Warm Springs.

II

Whether E.P.'s statutory and due process rights were violated.

Section 53-21-131, MCA, provides those persons ordered to long term commitment with a right to appeal at any time within 90 days after discharge. Therefore, we will consider the procedural issues raised by E.P. even though she was discharged prior to the consideration of her appeal. However, our determination on the procedural issues does not affect her commitment to Warm Springs.

In the petition filed by the County Attorney on May 10, 1989, there is a statement of E.P.'s rights as set forth in § 53-21-111 through 53-21-119, MCA (1987). These are summarized as requiring the right to notice reasonably in advance of the hearing; the right to know in advance of hearing the names and addresses of witnesses who will testify; the right to offer evidence and present witnesses; the right to cross

7

examine witnesses; the right to be represented by counsel; the right to remain silent; the right to be proceeded against according to the rules of evidence; the right to view and copy all petitions; the right to be examined by a professional person of her choice when such professional person is reasonably available; the right to refuse any but lifesaving medications for up to 24 hours; and the right to valid review of any order of commitment. Unfortunately a number of the foregoing rights granted to E.P. under the statutes were disregarded by the Center and the County.

Section 53-21-129, MCA, sets forth the procedure to be followed when an "emergency situation" exists. It requires that a police officer take a person who appears to be seriously mentally ill and thus a danger to herself, into custody only for a sufficient time to contact a professional person. That was done when the Billings Police promptly brought E.P. to the Center. The section further requires that if the professional person agrees that the person detained appears to be seriously mentally ill and that an emergency situation exists then the person may be detained and treated.

That was also complied with here when both the psychiatrist and nurse examined E.P. on the morning of May 4. However the right of the Center to detain and treat lasted only until May 5, the next regular business day. The statute provides that at that time the professional person shall release the detained person or file findings with the county

8

attorney. If he determines probable cause to exist, the county attorney shall file a petition. The professional person also is required to file a report with the court explaining his actions. That portion of § 53-21-129, MCA, was totally disregarded.

When the Center failed to file with the County Attorney, the Center should have released E.P. as required by statute. Instead of doing so, the Center retained E.P. from May 5 to May 10, 1989, without any proper authority for doing so. Under these statutes, the proper procedure would have been for the Center to have filed the findings of Dr. Yaney with the County Attorney by May 5, together with Dr. Yaney's report. In turn the County Attorney should then have filed a petition with the District Court on May 5, rather than on May 10 as was actually done. On May 5 notice of the petition should have been hand delivered to E.P. and to her counsel on or before the initial appearance. Notice of the petition and order setting the time and place of hearing and name of her counsel, professional person and friend, should have been hand delivered to her on May 5.

Even though proper procedure was followed on the actual commitment, which proceedings took place on May 10, 11 and 12, 1989, there has been a serious failure to follow the due process requirements of our statutes and law. It is critically necessary that such due process rights of our citizens be protected. As stated by the Supreme Court of the United

9

States in Minnesota ex rel Pearson v. Probate Court of Ramsey County, 309 U.S. 270:

> We fully recognize the danger of a deprivation of due process in proceedings dealing with persons charged with insanity . . . and the special importance of maintaining the basic interests of liberty in a class of cases where the law though "fair on its face and impartial in appearance" may be open to serious abuses in administration and the courts may be imposed upon _if the substantial rights of persons charged are not adequately safeguarded at every stage of the proceeding._ (Emphasis added.)

Here it is clear that the substantial rights of E.P. were not adequately safeguarded. There was a total failure to follow the essential elements of the statutes which required the release of E.P. on May 5, 1989 in the absence of appropriate filings. In the same way, she should have been released on May 6, 7, 8 and 9, in the absence of the appropriate procedures.

It may be that the Center would argue that they should not be chastised because the medical care which was given from May 4 through May 12 by the Center was clearly adequate. While the record supports that conclusion, adequate medical care is not a basis for disregarding the due process and statutory rights of a person who is charged with being seriously mentally ill. We admonish the Center, the County Attorney's office, and the Yellowstone County Department of Family Services for their failure to comply with the statutory due process rights on the part of E.P. We recommend that they immediately confer and set up procedures which will

10

protect against a reoccurrence of this type of denial of due process. We caution the District Court in Yellowstone County to take appropriate steps so that in the future, due process rights on the part of such persons as E.P. will be properly and adequately protected. We point out that this case is a reoccurrence of a similar problem in Yellowstone County as discussed in Matter of T.J.F. (1987), 227 Mont. 473, 747 P.2d 1356.

We hold that the statutory and due process rights of E.P. were violated from May 5 through May 9. We further hold that the commitment proceedings which commenced on May 10 were sufficient and we affirm her commitment.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice Diane G. Barz did not participate in this Opinion.

11