No. 91-275

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN THE MATTER OF THE MENTAL HEALTH OF

L.C.B.,

        Appellant.

APPEAL FROM:   District court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael H. Keedy, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

        Robert B. Allison, Attorney at Law,
        Kalispell, Montana

      For Respondent:

        Hon. Marc Racicot, Attorney General, John
        Paulson, Assistant Attorney General,
        Helena, Montana: Ted O. Lympus, Flathead
        County Attorney, Dennis J. Hester, Deputy
        County Attorney, Kalispell, Montana

FILED

APR 3 - 1992
Filed:
*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  October 31, 1991

Decided:  April 3, 1992

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

This is an appeal from the Eleventh Judicial District Court, Flathead County. The Flathead County Attorney's office filed with the District Court a petition for the involuntary commitment of L.B., pursuant to §§ 53-21-114 through -126, MCA, alleging that L.B. was seriously mentally ill. The District Court held a hearing on the matter and concluded that L.B. was seriously mentally ill and in need of treatment. The District Court ordered L.B. committed to the Montana State Hospital in Warm Springs for treatment. It is from this order that L.B. appeals. We affirm.

The following issues are presented for review by this Court:

1. Was the District Court's finding that L.B. is seriously mentally ill clearly erroneous?

2. Did the District Court err in considering testimony concerning L.B.'s behavior while L.B. was detained following dismissal of a prior petition for involuntary commitment?

3. Did the District Court err in denying L.B.'s motion to dismiss the second petition for involuntary commitment on the basis of *res judicata?*

The appellant is a 30-year-old male who was arrested on April 26, 1991, in connection with an automobile accident. While in custody, the appellant appeared to be disoriented and confused. This behavior prompted law enforcement officials to request that appellant be examined by an individual in the mental health field. A mental health assessment was conducted by Dr. Barbara Louise

2

Stone, a clinical therapist at the Western Montana Regional Community Mental Health Center in Kalispell. Dr. Stone is a certified "professional person" pursuant to § 53-21-102(12), MCA.

After visiting with the appellant in the Flathead County Jail, Dr. Stone concluded that appellant was seriously mentally ill. Specifically, Dr. Stone diagnosed the appellant as suffering from chronic paranoid schizophrenia. In Dr. Stone's opinion, the appellant's condition significantly impaired his ability to meet his own basic needs and protect his life and health. When the appellant refused to accept the services of the mental health center, Dr. Stone submitted an emergency report requesting his commitment to the Montana State Hospital. Pursuant to this emergency report, on May 1, 1991, the Flathead County Attorney's Office filed with the District Court a petition for involuntary commitment.

The District Court found probable cause, appointed counsel for appellant, and scheduled a hearing on the matter, which was held on May 2, 1991. At the hearing, the State argued that appellant was seriously mentally ill and suffered from a mental disorder which had deprived the appellant of the ability to protect his own life or health in accordance with § 53-21-102(15), MCA. The only evidence received by the court was the testimony of Dr. Stone. Dr. Stone described the bizarre behavior of the appellant and gave her diagnosis of his illness. Dr. Stone also testified that in her opinion appellant's condition made him unable to protect his own

life or health.  At the conclusion of Dr. Stone's testimony, counsel for the appellant made a motion to dismiss the petition for involuntary commitment.  Appellant's counsel argued that there had not "been a sufficient showing of either endangerment or inability to protect his own life and provide for his own needs."  The District Court agreed and granted the motion to dismiss the petition.  The District Court acknowledged that the appellant's behavior was bizarre and that appellant appeared to be a very troubled young man.  However, the court felt the testimony concerning appellant's inability to protect his own life or health was simply too speculative.

Upon granting appellant's motion to dismiss, the District Court ordered the appellant released.  After the hearing had terminated, a deputy sheriff from the Flathead County Detention Center approached the District Court Judge and appellant's counsel while they were visiting.  The deputy sheriff requested permission to detain the appellant for approximately 30 minutes until another deputy sheriff returned from lunch.  The second deputy upon whom they were waiting was the mental health liaison at the jail and also knew the appellant's sister.  It was hoped that arrangements could be made for his sister to come and get the appellant, as opposed to just sending him out into the street.

Upon returning to work from lunch, the deputy sheriff attempted to locate a place for the appellant, or at least someone to come and get him.  *An* individual from the Crisis Response Team

came to see the appellant. This individual determined that appellant was too ill to stay in the Crisis Response Team's safe house for mentally ill persons. Appellant's sister was contacted, but she refused to come get the appellant, indicating that she was afraid of him. Dan George, Director of the Lamplighter House which is a program of the Western Montana Regional Community Mental Health Center, then came to the jail to see the appellant. George is a certified "professional person" under Montana law. After interviewing the appellant, George determined that appellant should be committed involuntarily to the State Hospital for immediate treatment. Upon George's recommendation, the Flathead County Attorney's Office filed a second petition for involuntary commitment that same afternoon. The District Court Judge ordered an immediate hearing on the matter. Prior to the second hearing, counsel for the appellant made a motion to dismiss the State's second petition. The District Court denied that motion. George, and the deputy who had been trying to locate a place for the appellant, both testified at the second hearing. At the conclusion of the hearing, appellant renewed the motion to dismiss. The District Court determined that the appellant was seriously mentally ill, that such mental illness had deprived the appellant of the ability to protect his life or health, and that commitment to the State Hospital at Warm Springs was the least restrictive environment available for treatment. The District Court's order of May 2, 1991, provided that appellant would be transferred to the

State Hospital at Warm Springs for a period of treatment not to exceed 90 days, unless extended as provided by law. The District Court reconsidered this decision and reaffirmed it in an order dated May 9, 1991.

**I**

Was the District Court's finding that L.B. is seriously mentally ill clearly erroneous?

Appellant alleges that the testimony given at the second hearing was insufficient to support the District Court's decision. Section 53-21-127, MCA, provides that prior to ordering the involuntarily commitment of a person to the State Hospital at Warm Springs, the District Court must first determine that the individual is seriously mentally ill. Section 53-21-102(15), MCA, defines the term seriously mentally ill and provides in part that:

> ''Seriously mentally ill" means suffering from a mental disorder which has resulted in self-inflicted injury or injury to others or the imminent threat thereof or <u>which has deprived the person afflicted of the ability to wrotect his life or health</u>. [Emphasis added.]

Section 53-21-127, MCA, also provides that the court shall choose the least restrictive environment available that will protect the individual, the public, and permit effective treatment.

The standard of proof for the District Court in involuntary commitment proceedings is set out at § 53-21-126(2), MCA, which reads in part:

> The standard of proof in any hearing held pursuant to this section is proof beyond a reasonable doubt with respect to any physical facts or evidence and clear and

> convincing evidence as to all other matters, except that mental disorders shall be evidenced to a reasonable medical certainty.

Concerning this statute, we have stated that:

> [P]roof of mental disorders to **a** reasonable degree of medical certainty is sufficient if, considered with all the other evidence in the case, the trier of fact is led to the conclusion that the mental disorder exists by clear and convincing proof.

In the Matter of G.P. (1990), 246 Mont. 195, 197, 806 P.2d 3, 5.

On appeal, this Court will not disturb the District Court's findings of fact in a nonjury trial unless they are clearly erroneous. In the Matter of the Mental Health of E.P. (1990), 241 Mont. 316, 787 P.2d 322; Rule 52(a), M.R.Civ.P. This Court will also give due regard to the opportunity of the District Court to judge the credibility of the witnesses. In the Matter of the Mental Health of R.J.W. (1987), 226 Mont. 419, 736 P.2d 110. Upon reviewing conclusions of law reached by the District Court, this Court will merely determine if the decision below was correct or not. In The Matter of J.L.S. and A.D.S. (1988), 234 Mont. 201, 761 P.2d 838. In the present case, the District Court limited the testimony at the second hearing to only those events occurring subsequent to the first hearing. This Court will only review the evidence presented at the second hearing.

As previously mentioned, the District Court must find by clear and convincing evidence that an individual is seriously mentally ill prior to ordering the involuntary commitment of that individual. We will not disturb such a finding unless it is

7

clearly erroneous. This Court has recently adopted a three-part test for determining if a finding is clearly erroneous. Interstate Production Credit Ass'n v. DeSaye (Mont. 1991), 820 P.2d 1285, 48 St.Rep. 986. In DeSave, we explained this three-part test stating that:

> First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence, we will determine if the trial court has misapprehended the effect of evidence. [Citations omitted.] Third, if substantial evidence exists and the effect of the evidence has not been misapprehended, the Court may still find that "[a] finding is 'clearly erroneous' when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed." [Citation omitted.]

DeSave, 820 P.2d at 1287.

In the present case, the District Court determined that appellant was seriously mentally ill. He was unable to protect his life or health and the least restrictive environment in which to receive treatment was at the State Hospital at Warm Springs. We agree. There was substantial evidence presented at the hearing to support the District Court's finding. The uncontradicted testimony indicated that the appellant suffered from chronic paranoid schizophrenia, which without treatment and medication would continue to impair his ability to meet his most basic needs. The appellant demonstrated an inability to take care of or assess his basic health needs. Although food was provided for him at the detention center, he was not eating, even though he complained of

8

hunger. The appellant was not oriented to person, place, and time. Appellant appeared to be suffering from auditory hallucinations which additionally impaired his ability to process information and respond to even the simplest of tasks.

The substantial evidence supports the District Court's decision in this instance. The District Court did not misapprehend the effect of the evidence, nor does a review of the record leave this Court with a definite and firm conviction that a mistake ha5 been committed. The finding by the District Court that L.B. is seriously mentally ill was not clearly erroneous.

## II

Did the District Court err in considering testimony concerning L.B.'s behavior while L.B. was detained following dismissal of the first petition for involuntary commitment?

The testimony given at the second hearing, which resulted in L.B.'s involuntary commitment, was based on information obtained on the afternoon of May 2, 1991, after the District Court had ordered the appellant released. On appeal, it is argued by appellant that all evidence obtained after the District Court's order to release the appellant should be excluded. Appellant requests that this Court apply, for the first time, the criminal law exclusionary rule to the present situation.

Both parties in this case recognize that involuntary commitment hearing proceedings are civil in nature. In the Matter of the Mental Health of **G.S.** (1985), 215 Mont. 384, 698 P.2d 406;

§ 53-21-115(7), MCA. Despite the fact that this was not a criminal proceeding, appellant's argument that the exclusionary rule should apply is not altogether unpersuasive. Appellant correctly points out that such proceedings may result in a massive curtailment of liberty for the person committed. Therefore, involuntary commitment proceedings must carefully follow the mandatory statutory guidelines and the courts must safeguard the due process rights of the individual involved at every stage of the proceeding. Matter of E.P., 787 P.2d at 322.

This Court has previously explained the objectives of commitment hearings as follows:

> The core purpose of our statutory scheme in addressing those unfortunate persons who suffer a mental disorder is to secure for them such care and treatment, skillfully and humanely administered, as may be in their best interest. This purpose is codified in § 53-21-101(1), MCA.

In the Matter of J.B. (1985), 217 Mont. 504, 510, 705 P.2d 598, 602. Suppressing relevant evidence in commitment proceedings would defeat the purpose of the proceeding, which is to secure the appropriate treatment for those who need it and are unable, due to their mental condition, to obtain this treatment for themselves. We decline to apply the criminal law exclusionary rule to this involuntary commitment hearing. The District Court did not err in considering testimony concerning L.B.'s behavior while L.B. was detained following the dismissal of the first petition for involuntary commitment.

## III

Did the District Court err in denying L.B.'s motion to dismiss the second petition for involuntary commitment on the basis of *res judicata?*

Prior to the start of the second hearing the appellant made a motion to dismiss the second petition on the grounds that the doctrine of *resjudicata* barred the District Court from reconsidering this matter. This Court has stated that four criteria must be met before an issue is barred by *resjudicata:* (1) the parties or their privies must be the same: (2) the subject matter of the action must be the same: (3) the issues must be the same and relate to the same subject matter; and **(4)** the capacities of the persons must be the same in reference to the subject matter and to the issues between them. Phelan v. Lee Blaine Enterprises (1986), 220 Mont. 296, 716 P.2d 601. In this case, the District Court expressly prohibited the introduction of evidence relating to the appellant and the time period prior to the first hearing. Only testimony of evidence obtained subsequent to the first hearing was allowed. Therefore, the issues were not the same in the second hearing. Additionally, the doctrine of *resjudicata* only applies to orders that are final or by their nature are intended to be final. Peterson v. Montana Bank of Bozeman, N.A. (1984), 212 Mont. 37, 687 P.2d 673. The doctrine of *resjudicata* is intended to protect litigants from repeated suits over the same issues and subject matter and to provide a final

11

resolution of the controversy. Brault v. Smith (1984), 209 Mont. 21, 679 P.2d 236. However, **a** commitment hearing is different than most other civil suits. **A** finding at one time that an individual does not suffer from a serious mental illness is not intended to be a final and irrevocable decision on the individual's mental health. The statutes contemplate that the question of whether an individual is seriously mentally ill may be brought at any time as long as the necessary statutory criteria are met. The District Court did not err in denying appellant's motion to dismiss the second petition for involuntary commitment on the basis of res judicata.

We affirm.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

April 3, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Robert B. Allison
Attorney at Law
130 5th St. E.
Kalispell, MT 59901

Dennis J. Hester
Flathead County Attorney's Office
800 South Main
Kalispell, MT 59901

*+ Attorney General
John Paulsen
(hand delivered)*

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy