No. 92-201

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

BRIEN M. WEBER and GAYLE L. WEBER,

       Plaintiffs and Respondents,

  v.

J. GEORGE BROADY RIVERA and
MARY VIRGINIA B. RIVERA,

       Defendants and Appellants.

FILED

NOV 12 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Ravalli,
The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

          Bryan L. Asay, Kelley & Asay, Helena, Montana

      For Respondent:

          John D. Greef, Attorney at Law, Hamilton, Montana

Submitted on Briefs:   August 6, 1992

Decided:   November 12, 1992

Filed:

                                         Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellants George and Mary Rivera appeal from the decision of the District Court of the Fourth Judicial District, Ravalli County. This dispute arose out of a contract to buy and sell certain land in Ravalli County, Montana. The District Court refused to grant Riveras' rescission of the contract and awarded respondents, Brien and Gayle Weber, liquidated damages in the amount of $43,000. We affirm in part and reverse in part.

There are two issues before the Court:

1. Was the District Court clearly erroneous in denying Riveras the right to rescind the contract?

2. Did the District Court incorrectly find the liquidated damages clause of the contract valid under § 28-2-721, MCA?

Brien and Gayle Weber listed their ranch property, located in Ravalli County, for sale in June 1990. The Weber family had owned the ranch property since 1911 and had lived in the residence located on the property since 1915. In June 1990, Mary Rivera was shown several properties in the area by a sales representative of a local real estate agency, including the Webers' ranch property. In July 1990, Mary Rivera travelled from California to Montana with her husband George, to again view several properties in the Ravalli County area. The Weber property was one of the properties the Riveras were to view.

The District Court found that prior to viewing the Weber ranch property, George Rivera questioned the sales representative concerning the water used for the residence located on the

2

property. The sales representative replied that although the water would not "test out," the Weber family had been using it for three generations and that to the best of their knowledge no one had ever had any problems. Upon arriving at the property, George Rivera asked Brien Weber about the water. Weber replied that his family had been drinking the water for years without any difficulty, but that it would not test out. It is not clear that the actual source of the water was adequately explained to the Riveras. The Riveras deny that at that time they were told the water would not test out.

On July 17, 1990, the same day they both viewed the property, the Riveras made an offer to purchase the property for $430,000. They then signed a form contract provided and required by United National Real Estate, a national company of which the local real estate agency was a member. The Riveras made an initial deposit of $5000 earnest money at the time they signed the contract. Shortly thereafter, the Webers executed the contract. The contract entered into by the parties had a clause which stated that if either party failed to complete the transaction they would be required to pay to the other party ten percent of the purchase price as "liquidated damages."

In early August 1990, Mary Rivera returned to Montana to obtain water samples for testing. The sales representative told her that she was wasting her time because, as he had previously indicated, the water would not check out. On August 7, 1990, the Riveras received the results of the water tests. The tests indicated the water was contaminated. On August 13, 1990, the

3

Riveras communicated to the sales representative their intent that the contract be voided and that the $5000 deposit be returned. The Riveras then received several letters from the Webers' counsel. The Webers denied making any misrepresentations concerning the quality of the water, but suggested that something could be worked out regarding the costs of putting a well on the property. Additionally, the Webers reiterated that the contract called for a closing date of September 1, 1990, and that they were still willing to close the transaction on that date. The closing did not occur on September 1, 1990.

The Webers brought suit on October 24, 1990, alleging breach of contract and seeking to enforce the liquidated damages clause in the contract. The Riveras filed an answer and counterclaim alleging that the liquidated damages provision was actually an invalid penalty clause. The Riveras raised the affirmative defenses of constructive fraud and mistake of fact. In the counterclaim, the Riveras alleged negligent representation by both the Webers and the sales representative. A bench trial was held on November 22, 1991. The District Court entered judgment for the Webers on March 3, 1992. The court concluded that the Riveras had failed to perform their obligations under the contract and awarded $43,000 in liquidated damages. The Riveras took nothing under their counterclaim. The Riveras appeal.

I

Was the District Court clearly erroneous in denying the Riveras the right to rescind the contract?

4

The District Court found that the Riveras were not entitled to rescind the contract in question. On appeal, this Court will not disturb the District Court's findings of fact in a bench trial unless they are clearly erroneous. In the Matter of the Mental Health of E.P. (1990), 241 Mont. 316, 787 P.2d 322; Rule 52(a), M.R.Civ.P. This Court will also give due regard to the opportunity of the District Court to judge the credibility of the witnesses. In the Matter of the Mental Health of R.J.W. (1987), 226 Mont. 419, 736 P.2d 110.

The Riveras contend that pursuant to § 28-2-401, MCA, their consent to the contract was neither real nor free because of constructive fraud on the part of the Webers and because of mistake. Section 28-2-1711, MCA, allows a party to rescind a contract if that party's consent was given by mistake or obtained through fraud. The Riveras argue that the quality of the water was misrepresented, either intentionally or unintentionally, prior to the time they entered the contract. They also contend that had they known the true nature of the water on the Weber property they would never have contracted to buy the property. At trial, the parties offered conflicting testimony as to their discussions concerning the water prior to entering the contract.

The Webers and the sales representative testified that prior to entering into the contract, the Riveras were told that although the water would probably not test out, the Weber family had been drinking it without problems for generations. The Riveras testified that they were not given this information until after

5

they had entered the contract. In fact, the Riveras testified that prior to entering into the contract they were led to believe by the Webers that the water was fine. The record does not indicate that the source of the water was clearly explained to the Riveras. However, it was the quality of the water and not its source, which was the basis for the Riveras' decision to seek rescission of the contract.

The resolution of this issue depends upon a factual determination as to what was actually said concerning the water quality prior to the execution of the contract. If the Webers did communicate to the Riveras that the water would not test out, then there is no basis upon which to allow the Riveras to rescind the contract.

The District Court resolved this factual dispute in favor of the Webers, finding that they did communicate to the Riveras that the water would not test out. The District Court, having had the opportunity to observe and judge both the demeanor and credibility of the witnesses, was in a position superior to this Court to make such a factual finding. The District Court was not clearly erroneous in finding that the Riveras were not entitled to rescission of the contract.

II

Did the District Court incorrectly find the liquidated damages clause of the contract valid under § 28-2-721, MCA?

The District Court concluded that the Webers were entitled to $43,000 in liquidated damages. On appeal, the Riveras have

6

requested that this Court review this conclusion of law. Our standard of review of questions of law is simply whether the District Court's interpretation of the law is correct. Schaub v. Vita Rich Dairy (1989), 236 Mont. 389, 770 P.2d 522. The basis for this standard of review is that no discretion is involved when a tribunal arrives at a conclusion of law. The tribunal either correctly or incorrectly applies the law. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 803 P.2d 601.

The contract between the Webers and the Riveras contained a clause which stated that:

> It is agreed that if either seller or buyer fails or neglects to perform his part of this agreement he shall forthwith pay as liquidated damages to the other party a sum equal to ten percent of the agreed price of sale.

Based on this clause, the District Court awarded $43,000 in liquidated damages to the Webers. The Webers contend on appeal that the clause was a valid liquidated damages provision under Montana law. The Riveras allege the clause was in reality a penalty clause and is void under existing Montana law. Section 28-2-721, MCA, provides that:

> (1) Every contract by which the amount of damage to be paid or other compensation to be made for a breach of an obligation is determined in anticipation thereof is to that extent void, except as expressly provided in subsection (2).

> (2) The parties to a contract may agree therein upon an amount which shall be presumed to be an amount of damage sustained by a breach thereof when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.

7

As set out in the statute, a contractual provision in Montana purporting to set out in advance the amount of damages payable upon a breach of the contract is void. However, an exception is provided for situations in which the parties have agreed in advance on an amount of damages because it would be impracticable or extremely difficult to fix the actual damages. This Court has previously explained in interpreting this statute that:

> "Whether the forfeiture provision imposed a penalty, or provided for liquidated damages, is to be determined from the language and subject matter of the contract, the evident intent of the parties and all the facts and circumstances under which the contract was made. The most important facts to be considered are whether the damages were difficult to ascertain, and whether the stipulated amount is a reasonable estimate of probable damages or is reasonably proportionate to the actual damages sustained at the time of the breach."

Morgan and Osgood v. Big Sky of Montana (1976), 171 Mont. 268, 273, 557 P.2d 1017, 1020 (quoting Waggoner v. Johnston (Okl. 1965), 408 P.2d 761, 769).

In this case, the provision for liquidated damages was contained in a form contract prepared and required by United National Real Estate. There was absolutely no attempt on the part of the parties prior to entering the contract to reasonably estimate what the damages might be in the event of a breach. Both the Webers and the sales representative testified that they had no idea how the amount in the provision was even chosen. Pursuant to the provision, the Webers were entitled to $43,000 regardless of whether they were able to resell the property the next week, the next month, or the next year. They would have been entitled to the

8

$43,000 even if they found a subsequent purchaser willing to pay more than the Riveras. In short, the provision provided for a set amount of damages without any regard for or attempt to determine what the actual damages might be.

Despite the lack of any evidence in the record indicating that an attempt was made to reasonably estimate the damages upon breach of the contract, the Webers argue on appeal that it would have been extremely difficult to determine what the actual damages might have been in this situation. The Webers point out that this Court has previously upheld a liquidated damages clause in a similar situation involving a contract for the sale of land. Erickson v. First Nat'l Bank of Minneapolis (1985), 215 Mont. 350, 697 P.2d 1332. Additionally, the Webers point out that it appears as if the amount of damages specified in the provision approximate those actually suffered. The Webers argue that this weighs heavily in favor of the provision being interpreted as a valid liquidated damages provision. However, any relationship between the amount of actual damages suffered and the amount specified in the provision is merely a fortuitous coincidence and not the result of a reasonable estimate in advance to determine what the damages might be. The fact that the liquidated damage provision in this case may approximate the actual damages suffered, is insufficient by itself to create a valid liquidated damages provision. Our decision in Morgan, along with the applicable statute, makes it clear that other factors must also be considered. In this case, it is clear from the subject matter, the surrounding circumstances,

9

and the intent of the parties that the provision was simply a penalty clause and as such is void under Montana law. This matter must be remanded to the District Court for a determination of the actual damages suffered by the Webers as a result of the breach of contract by the Riveras.

This matter is affirmed in part and reversed in part and is remanded to the District Court for further proceedings consistent with this opinion.

_William E. Hunt_
Justice

We concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_Karla M. Gray_

_Terry Trieweiler_

_R. C. McDonough_

_Fred J. Weber_
Justices

10

November 12, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Bryan L. Asay
Kelley & Asay Law Firm
328 Fuller Ave.
Helena, MT 59601

John D. Greef
Attorney at Law
P.O. Box 1434
Hamilton, MT 59840

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy