NO. 93-251

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

MARK EISSINGER,

       Plaintiff and Appellant,

  v.

MULLIN TRUCKING, INC., a
corporation, and CLINT MULLIN,

       Defendants and Respondents.

**FILED**

DEC 22 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Seventh Judicial District,
                In and for the County of Richland,
                The Honorable Richard G. Phillips, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           John J. Cavan, Cavan, Smith & Cavan,
           Billings, Montana

       For Respondents:

           Arnie A. Hove, Attorney at law,
           Sidney, Montana

Submitted on Briefs:  September 23, 1993

Decided:  December 22, 1993

Filed:

/Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Mark Eissinger appeals from a judgment of the Seventh Judicial District Court, Richland County, denying his request to rescind a sale and transfer of title to a Peterbilt truck and a refrigerated trailer to respondents Mullin Trucking, Inc., and Clint Mullin, based on his claim of constructive or actual fraud, and undue influence.

We affirm.

The issues are as follows:

1. Did the District Court err when it found that appellant failed to prove constructive fraud?

2. Did the District Court err when it found that appellant failed to prove actual fraud or undue influence?

3. Did the District Court err when it found that the consideration paid by respondent closely approximated the value of the truck and trailer at a distress sale?

Appellant grew up on his parents' farm in Brockway, Montana, and graduated from high school in 1989. In August 1990, appellant completed truck driving school and purchased a 1989 Ford truck for approximately $75,000, without a down payment, after his father arranged and co-signed for the loan. Appellant's father separately purchased a dry van truck trailer for $9,000 cash. From approximately October 1990 to March 1991, appellant leased the truck and trailer as owner/operator with a Billings truck company called Ligon.

2

In November 1990, appellant and his father paid off the truck using $40,000 from a trust fund established by the father, and with additional cash from the father. In January 1991, due to numerous truck repairs and downtime, appellant sold his 1989 Ford truck for cash and purchased a new 1991 Peterbilt truck for approximately $105,000, paying $36,000 in cash and financing the balance through Commercial Associates of Englewood, Colorado.

Appellant and Clint Mullin (respondent) met in mid-March 1991 at the Northwest Peterbilt dealership in Billings. There, appellant expressed his dissatisfaction in his employment with Ligon, and respondent offered to lease his truck. Later, appellant, his father, and respondent met to discuss the lease arrangement. At the meeting, respondent informed appellant that he would require a refrigerated trailer to handle the types of loads he would haul. In April 1991, appellant traded his dry van trailer for a refrigerated trailer (reefer trailer) and $4,500 cash. The parties verbally agreed that appellant would receive 90 percent of the freight bill for hauling the loads, and respondent would receive 10 percent because he provided the loads.

In May 1991, appellant, without the knowledge or assistance of his father, purchased a new Honda motorcycle for approximately $5,000, and in June he purchased a new pickup for $31,000. However, with $22,000 owing on the new pickup, in January 1992, appellant sold the pickup in exchange for approximately $17,000 and an older pickup.

3

Appellant hauled steadily in April and May 1991, but he was not paid until the end of June or early July 1991. Appellant chose not to haul loads during June. By mid-July, appellant was approximately three months in arrears in his truck payments.

On July 16, 1991, appellant transferred title of the truck and trailer to respondent **Mullin** Trucking, Inc., by signing a buy/sell agreement, two bills of sale, and title documents to both truck and trailer. **Mullin** Trucking, Inc., assumed the encumbrance on the truck totaling $56,443.92, which was consideration for the transfer. Prior to the transfer, respondent told appellant to inform his father of his financial difficulties, but appellant did not do so.

Appellant brought this action in the District Court, asking the court to rescind the July 16, 1991, sale and transfer of title to the truck and trailer to **Mullin** Trucking, Inc., alleging the transfer was induced by constructive or actual fraud, and undue influence. Appellant alleged that he relied on respondent in matters concerning the trucking business. Respondent gave specific financial advice to appellant based on his superior business experience, knowledge, and mature judgment. Appellant contends that respondent had influence over him and made promises to him in return for the truck transfer, without **any** intention of performance, and also created a false impression by words and conduct to respondent's own advantage.

4

I.

Did the District Court err when it found that appellant failed to prove constructive fraud?

Appellant argues that his consent was not real or free because respondent's conduct amounted to actual or constructive fraud and undue influence. Section 28-2-1711, MCA, allows a contracting party to rescind a contract if that party's consent was acquired through fraud or undue influence.

Section 28-2-406, MCA, defines constructive fraud as:

> (1) any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him: or

> (2) any such act or omission as the law especially declares to be fraudulent, without respect to actual fraud.

Appellant argues that the District Court erred when it considered whether a fiduciary relationship was present in the relationship between the parties. This Court has determined that a plaintiff need not prove a fiduciary relationship existed to establish constructive fraud. McJunkin v. Kaufman & Broad Home Systems (1987), 229 Mont. 432, 439-40, 748 P.2d 910, 914-15. This Court has explained the application of § 28-2-406, MCA, by stating:

> By its terms, the statute does not require that the plaintiff demonstrate a fiduciary relationship. It merely requires the establishment of a duty. We have recognized that a sufficient duty can arise in a commercial transaction such as the one at hand. We find the defendants had a duty to refrain from intentionally

5

or negligently creating a false impression by words or conduct.  [Citations omitted].

McJunkin, 748 P.2d at 915.

In the present case, the District Court considered whether a fiduciary relationship was present, but also considered the factors required in the statute to prove constructive fraud and whether respondent had gained an advantage by misleading appellant to his prejudice.

Appellant argues that the District Court erred when it failed to adequately consider all the testimony and evidence before it. Appellant contends that respondent intentionally or negligently led appellant to believe respondent would retransfer title to the truck and trailer to him whenever he requested without any conditions attached.  This Court will not overturn the district court's findings of fact in a bench trial unless they are clearly erroneous.  In the Matter of the Mental Health of E.P. (1990), 241 Mont. 316, 787 P.2d 322; Rule 52(a), M.R.Civ.P.  This Court will also give due regard to the opportunity of the district court to determine the credibility of the witnesses. In the Matter of the Mental Health of R.J.W. (1987), 226 Mont. 419, 736 P.2d 110. See Weber v. Rivera (1992), 255 Mont. 195, 841 P.2d 534.

In interpreting this rule, this Court has adopted a three-part test:

> First, the Court will review the record to see if the findings are supported by substantial evidence.  Second, if the findings are supported by substantial evidence, we will determine if the trial court has misapprehended the

effect of [the] evidence. Third, if substantial evidence exists and the effect of the evidence has not been misapprehended the Court may still find that "[A] finding is 'clearly erroneous' when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed." [Citation omitted].

Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

In Weber, we held that the resolution of a rescission of contract depends upon a factual determination about the conversations between the parties. Weber, 841 P.2d at 536 In the present case, the District Court made factual determinations of the conversations between the parties, and respondent's conduct prior to the truck and trailer transfer. The District Court determined the credibility of the witnesses and found no evidence to support a claim for constructive fraud. We hold that the court was not clearly erroneous.

II.

Did the District Court err when it found that appellant failed to prove actual fraud or undue influence?

Section 28-2-405, MCA, defines actual fraud as:

[A]ny of the following acts committed by a party to the contract or with his connivance with intent to deceive another party thereto or to induce him to enter into the contract:

(1) the suggestion as a fact of that which is not true by one who does not believe it to be true;

(2) the positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true:

7

(3) the suppression of that which is true by one having knowledge or belief of the fact:

(4) a promise made without any intention of performing it: or

(5) any other act fitted to deceive.

Appellant contends that the District Court failed to consider testimony that respondent made promises to appellant in return for the truck and trailer transfer, without any intention of performing them. Again, the District Court made factual determinations of the testimony concerning respondent's conduct and conversations prior to the truck and trailer transfer. The court found appellant failed to prove the necessary elements of actual fraud for several reasons. Appellant's admission of having had full control of the truck and trailer and that he could have been on the road hauling loads whenever he chose, overshadowed his testimony that he was dependant upon respondent for loads to haul. Prior to respondent's purchase, he told appellant to inform his father of the financial problems, but appellant failed to do so. Appellant's assertion that respondent agreed to a retransfer of the truck and trailer at an undetermined future date, without a determined or discussed manner or amount of payment, without a determined or discussed rate of interest, and without being in writing, is implausible.

Next, the court considered whether respondent exercised undue influence over appellant.

Section 28-2-407, MCA, defines undue influence as:

8

(1) the use by one in whom a confidence is reposed by another or who holds a real or apparent authority over him of such confidence or authority for the purpose of obtaining an unfair advantage over him:

(2) taking an unfair advantage of another's weakness of mind; or

(3) taking a grossly oppressive and unfair advantage of another's necessities or distress.

Appellant contends the District Court failed to consider testimony that respondent was in a superior position as one experienced in business, and that appellant was immature and naive in these matters. The court weighed the evidence whether respondent was in a position of authority or influence over appellant sufficient to take unfair advantage of him, and whether appellant had a weakness of mind. Appellant made several other arms-length transactions whereby he sold property for less than what was owed on it. Moreover, appellant admitted that when the transaction occurred he was old enough to handle his own affairs, was satisfied with the deal, and felt "in hindsight" he could have made a better deal. The court found the transfer between appellant and respondent was an arms-length transaction and that there was no actual fraud. We agree.

III.

Did the District Court err when it found that the consideration paid by respondent closely approximated the value of the truck and trailer at a distress sale?

9

Appellant contends the District Court failed to adequately consider evidence concerning the value of the truck and trailer to be nearer to $92,000, and the possibility that appellant's father would have paid the balance owed if foreclosure was imminent. The court found that although the trailer and truck may have been worth substantially more than the consideration paid by respondent, the consideration very closely approximated the value of the truck and trailer at a distress sale. Respondent agreed to pay all payments and delinquencies in the amount of $56,443.92, and to hold appellant harmless for all future payments. Appellant's transfer of the truck and trailer for less than fair market value was similar to, and consistent with, his prior financial transactions.

The District Court found for respondent and reasoned that it was not for the court to remake the contract between the parties simply because one may have received the better deal. We affirm the conclusion of the District Court.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

10

Justices