Nos. 95-351 and 95-469

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

ACIES PROPERTIES, INC.,
a Canadian corporation,

      Plaintiff and Respondent,

   v.

VAUGHN J. GARDNER and THELMA M. GARDNER,

      Defendants and Appellants.



APPEAL FROM:   District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable C. B. McNeil, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

         Vaughn J. Gardner and Thelma M. Gardner,
Pro Se, Eureka, Montana

      For Respondent:

         Todd A. Hammer, Warden, Christiansen,
Johnson & Berg, Kalispell, Montana

Submitted on Briefs: February 22, 1996

Decided: May 9, 1996

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Pursuant to Section I, Paragraph 3 (c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

The plaintiff, Acies Properties, commenced this action in the District Court for the Nineteenth Judicial District in Lincoln County by filing a complaint in which it sought specific performance of a real estate agreement by Vaughn and Thelma Gardner. After a two-day nonjury trial, the District Court issued an order in which it granted specific performance. The Gardners appeal from that order in cause number 95-351. After the court issued its order, Acies Properties requested and the court granted a stay pending appeal. The Gardners also appeal from that order in cause number 95-469. We have consolidated cause numbers 95-351 and 95-469 for appeal. We affirm the District Court's order in 95-351 and conclude that the question raised in 95-469 is moot.

We restate the issues as follows:

1.    Did the District Court err when it denied the Gardners' request for a jury trial?

2.    Did the District Court abuse its discretion when it denied the Gardners' motion to compel discovery?

3. Did the District Court abuse its discretion when it ruled on evidentiary matters?

4. Did the District Court abuse its discretion when it denied the Gardners' motion for verification?

5. Does substantial evidence support the District Court's findings?

6. Did the District Court err when it concluded that neither fraud nor a mistake of fact occurred?

7. Did the District Court abuse its discretion when it granted a stay pending appeal?

FACTUAL BACKGROUND

Acies Properties is a Canadian Corporation. The Gardners reside in Lincoln County and own land consisting of a home and lake frontage on Glen Lake. Pursuant to the terms and provisions of a 1992 written agreement between the parties, the Gardners agreed to sell, and Acies Properties agreed to purchase that real property. This property was described in the deed as:

> Tract 7A in Government Lot 3 in the SE¼NW¼ of Section 27, Township 36 North, Range 26 West, M.P.M., Lincoln County, Montana.

However, after a survey revealed the property's true size, the Gardners demanded more money than had been previously agreed upon. When Acies Properties refused to pay more, the Gardners refused to complete the sale. Acies Properties then filed the complaint for specific performance which gives rise to this appeal.

During trial, Greg Sells and Charles Cochrane, officers of Acies Properties, testified that they first began looking for lake shore frontage for use as a summer home in the spring of 1992, and for that reason, Acies Properties contacted Rick Vredenburg, a licensed real estate agent with Tobacco Plains Realty in Eureka, Montana. Vredenburg testified at trial that he **met** with the Gardners in the spring of 1992 and asked them whether they were still interested in selling their property. The Gardners had previously listed the property with Tom Waters, another real estate agent, but that listing had expired. Those listing **materials** described the property as Glen Lake home on 4.7 acres with over 425 **useable** lake front with a purchase price of $184,000. Vredenburg testified that he walked the boundaries of the property with Mr. Gardner who pointed out property lines which were generally consistent with the plat Vredenburg had obtained from the prior listing. The Gardners told Vredenburg they wished to sell the tract in its entirety, as demonstrated by the walk around the boundaries.

Testimony at trial also revealed that officers of Acies Properties traveled to Eureka in early July and met with Mr. Gardner to inspect the property and home. The officers walked the boundaries with Vredenburg who showed them the boundaries Mr. Gardner had previously shown. The officers testified that their interest was in the land's lake frontage, not the stated acreage of the land. When Acies Properties presented an offer dated July 3,

4

1992, to purchase the property for $195,000, it made the offer subject to a home inspection report and the verification of boundary lines and markers for the property. Testimony revealed that Acies Properties included the survey requirement to verify the eastern boundary of the property and determine the lake frontage involved.

Vredenburg testified that he followed up on Acies Properties' request for a survey and a home inspection report by contacting Mr. Gardner. Gardner stated that he would make no guarantee regarding the amount of the lake front on the property being sold. He stated that "whatever is in the parcel is what we're selling." As Vredenburg explained, the Gardners' position was as follows:

> Look we've showed you the property. You get what you get as is. I don't want to have to pay for a survey. I don't want to have [to] argue over if it's short or long or whatever. This is the deal. If they [Acies Properties] want a survey, they can go do whatever they want at their own expense.

Vredenburg testified that he then agreed to take the cost of a survey out of his own commission.

The Gardners made a counteroffer to Acies Properties on July 27, 1992, in which they agreed to sell the property for $195,000 but which provided that Tobacco Plains Realty would pay for the survey and the home inspection report. The counteroffer, which Acies Properties accepted on August 10, 1992, incorporated other terms of the July 3, 1992, offer. On September 8, 1992, the Gardners acknowledged the agreement and agreed that where applicable, the counteroffer superseded the original offer.

5

A survey subsequently revealed that the property consisted of 11.32 acres and that it had sufficient lake frontage to satisfy Acies Properties. Acies Properties then agreed to release the contingencies and provide for the Gardners' moving expenses.

After receiving the survey, the Gardners advised Acies Properties by written letters that while they were willing to proceed with the sale, they wanted additional money for the acreage in excess of 4.7 acres. Acies Properties refused to offer additional compensation and claimed that the property was sold as a parcel.

The parties' agreement provided for the remedy of specific performance. This action was brought to enforce that provision.

Following trial, Acies Properties requested a stay pending appeal to enjoin the Gardners from disposing of $15,000 it had paid them for moving expenses or from otherwise transferring or conveying the property subject to this action. The District Court granted the stay of judgment pending appeal. The Gardners also appeal that order.

## ISSUE 1

Did the District Court err when it denied the Gardners' request for a jury trial?

We review a court's conclusions of law to determine if they are correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

The District Court denied the Gardners' demand for a jury trial because it was untimely. Rule 38(b), M.R.Civ.P., provides that a demand for a jury trial must be served "not later than 10 days after the service of the last pleading directed to such issue." Here, the Gardners demanded a jury trial when they filed their pretrial order and contend that the pretrial order was the last pleading. However, all pleadings are set forth in Rule 7(a), M.R.Civ.P., and the pretrial order is not included in that list of pleadings. The Gardners should have made their request in their answer to the complaint, but did not do so. Because the Gardners failed to timely serve this demand, they waived their claim for a jury trial. Rule 38(d), M.R.Civ.P. Therefore, we conclude that the court did not err when it denied the Gardners' request for a jury trial.

ISSUE 2

Did the District Court abuse its discretion when it denied the Gardners' motion to compel discovery?

We review a district court's ruling relating to discovery to determine whether the court abused its discretion. *McKamey v. State* (1994), 268 Mont. 137, 145, 885 P.2d 515, 520.

After execution of the pretrial order, the Gardners moved to compel discovery. Rule 5 of the Montana Uniform District Court Rules requires parties in their pretrial order to set forth the additional discovery that they contemplate and the estimated time for completion of that discovery. The Gardners failed to do so,

7

and the District Court denied their motion stating that discovery had closed and that the pretrial order failed to state that additional discovery would be conducted. We conclude that the District Court did not abuse its discretion when it denied the Gardners' motion to compel.

ISSUE 3

Did the District Court abuse its discretion when it ruled on evidentiary matters?

The determination of whether evidence is relevant and admissible is left to the sound discretion of the trial court and will not be overturned absent a demonstration that its discretion has been abused. *In re Marriage of Johansen* (1993), 261 Mont. 451, 455, *863* P.2d 407, 410; *Hislop v. Cady* (1993), 261 Mont. 243, 247, 862 P.2d 388, 390.

Rule 103, M.R.Evid., requires a party to object to the admission of evidence in order to later claim error and provides that:

> (a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
> (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context . . . .

(Emphasis added.) The Gardners specifically contend that the District Court erred when it admitted the title insurance commitment. However, the Gardners failed to object during trial to

8

the admission of the title insurance commitment and therefore have waived any objection to its admission.

The Gardners also claim that Vredenburg said untrue things about their former real estate agent, Tom Waters, which they could not counter because they had neither the **time** nor the opportunity to call him to testify. However, a review of the record reveals that the Gardners neither objected to Vredenburg's testimony nor brought any problems with his testimony to the court's attention. Therefore, the Gardners also waived objections to Vredenburg's testimony.

Next, the Gardners contend that the court sustained objections without merit, did not allow them to ask questions and "told the witness what to answer." In support of the allegation that the court "told the witness what to answer," the Gardners cite to dialogue during which Vredenburg stated that he was lost or had lost track of the question. The court replied, "Say you don't know." Vredenburg then stated "I don't understand the question," and the question was restated. Neither this exchange nor the remainder of the record supports the Gardners' allegations.

Finally, the Gardners claim that they were denied their opportunity to question Vredenburg about Waters. However, a review of the record reveals that the court denied questions put to Vredenburg because they were beyond the scope of redirect examination. We conclude that the court did not abuse its

discretion when it ruled on the evidentiary issues complained of by the Gardners.

## ISSUE 4

Did the District Court abuse its discretion when it denied the Gardners' motion for verification?

We review discretionary trial court rulings to determine whether the court abused its discretion. *May v. First Nat? Pawn Brokers, Ltd.* (1995), 270 Mont. 132, 134, 890 P.2d 386, 388.

The day before trial, the Gardners filed a "motion for verification" with the court in which they asked the court to verify that they had received the same proposed findings and conclusions from Acies Properties that the judge had received. We are cited to no authority for such a requirement. Furthermore, the Gardners do not show that they were prejudiced by the court's denial of their request. We conclude that the District Court did not abuse its discretion when it denied the Gardners' motion for verification.

## ISSUE 5

Does substantial evidence support the District Court's findings?

The standard of review for a district court's findings of fact is whether they are clearly erroneous. Rule 52(a), M.R.Civ.P.; *Brown v. Tintinger* (1990), 245 Mont. 373, 377, 801 P.2d 607, 609.

The Gardners contend that several of the court's findings are clearly erroneous. These findings pertain generally to the issue

10

of whether the property was intended to be sold as a parcel or by the acre. Therefore, we first examine whether substantial evidence supports the court's finding that the property was sold as a parcel.

Both testimony of Acies Properties' witnesses and exhibits from the trial support a finding that the number of acres being sold was irrelevant to the Gardners and that the property was sold as a parcel and not by the acre. For example, at the trial Greg Sells and Charles Cochrane, officers of Acies Properties, both testified that the property was sold as a parcel and not by the acre. Sells stated that Acies Properties negotiated with the Gardners for the purchase of the land as an entire parcel or in gross and that neither party indicated in their dealings or in the written instruments that the property would be sold or purchased on a per-acre basis. Furthermore, nothing in Acies Properties' offer stated that it was agreeing to purchase the property other than as a parcel. Finally, Vredenburg, the real estate agent, testified that he walked the property with Mr. Gardner and that Gardner represented to him that the property would be sold in its entirety absent some personal items.

Both Sells and Cochrane also testified that it was Acies Properties who wanted a survey to verify the eastern boundary of the property to determine the lake frontage involved. The Gardners did not care about the survey. Specifically, Vredenburg testified that when he contacted Mr. Gardner about the survey, Gardner stated

11

that he would not be bound by a particular number of frontage feet and that he would make no guarantee as to the amount of the lake front or other characteristics of the property being sold. Vredenburg also testified that Mr. Gardner stated that "whatever is in the parcel is what we're selling." As Vredenburg explained, the Gardners' position was as follows:

> Look we've showed you the property. You get what you get as is. I don't want to have to pay for a survey. I don't want to have [to] argue over if it's short or long or whatever. This is the deal. If they [Acies Properties] want a survey, they can go do whatever they want at their own expense.

Vredenburg testified that he then agreed to take the cost of a survey out of his own commission.

Based on our review of the record, we conclude that substantial evidence supports the court's findings that the property was sold as a parcel rather than by the acre and that those findings were not clearly erroneous.

Next, we address the Gardners' allegation that the witnesses for Acies Properties lacked credibility. In support of this allegation, the Gardners identify alleged conflicts in the testimony and offer new evidence.

Although conflicts may exist in the evidence presented, it is the duty of the trial judge to resolve those conflicts. Due regard shall be given to the trial court's ability to judge credibility of witnesses, and this Court will not substitute its judgment for the trier of fact. *Eissinger v. Mullin Trucking,* Inc. (1993) , 263 Mont. 38, 42,

*865* P.2d 300, *302; Williams v. DeVinney* (1993), *259* Mont. 354, 359, 856 P.2d 546, 549.

Furthermore, we will not consider new evidence in the form of pay stubs, a letter prepared after trial, and real estate documents from 1988 which the Gardners contend prove that the court erred. The Gardners did not submit this evidence to the lower court, but instead attach the exhibits to their appeal brief. This Court is not a proper forum for the presentation of new evidence. We review only that evidence which has been presented in the district court.

The Gardners also present several issues for the first **time** on appeal. They contend that they were denied the right to review the real estate file of Tobacco Plains Realty, that the contingencies were not timely released, and that Acies Properties' certificate of authority was "fraudulently submitted by a non-existing corporation." It is well-settled that we will not consider issues raised for the first time on appeal. *Fandrich v. Capital Ford Lincoln Mercury* (1995), 272 Mont. *425, 431,* 901 P.2d 112, *115-16; Hislop v. Cady* (1993), 261 Mont. 243, *250, 862* P.2d 388, 392; *Weaver v. Law Firm of Graybill* (1990), 246 Mont. 175, 180, 803 P.2d 1089, 1092-93. We will therefore not consider these issues.

After a review of the record, we conclude that substantial evidence exists to support the court's findings that the property was sold as a parcel and that those findings were not clearly erroneous.

ISSUE 6

Did the District Court err when it concluded that neither fraud nor a mistake of fact occurred?

Conclusions of law are reviewed to determine whether the district court's interpretation and application of the law is correct. *Jim's Excavating Serv., Inc. v. HKM Assocs.* (1994), 265 Mont. 494, 501, 878 P.2d 248, 252.

The Gardners allege that the court erred when it concluded that Acies Properties did not engage in any fraud and that no mistake of fact occurred. In making this argument, the Gardners again contend that they believed they were selling 4.7 acres but that Acies Properties knew that the property consisted of more acreage.

However, Mr. Gardner testified that he had suspicions by August 10, 1992, that the tract consisted of more acreage than he thought and that he was anxious to receive the survey. Nonetheless, he signed an acknowledgment of the sale on September 8, 1992, without conditioning his acceptance on approval of the survey. This evidence suggests that Mr. Gardner neither believed that he was selling 4.7 acres nor relied on any alleged representation by Acies Properties. Fraud does not occur when the alleged misrepresentation is not relied upon. *Van Hook v. Baum* (1990), 245 Mont. 407, *410, 800* P.2d 151, 153; *Lowe v. Root* (1975), 166 Mont. 150, 155, 531 P.2d 674, 677.

14

We conclude that the District Court did not err when it held that no fraud or mistake of fact occurred. We therefore affirm the order and judgment of the District Court in cause number 95-351.

ISSUE 7

Did the District Court abuse its discretion when it granted a stay pending appeal?

The issue in cause number 95-469 is whether the District Court abused its discretion when it granted a stay pending appeal. Our decision in cause number 95-351 renders this issue moot because it "has ceased to exist and no longer presents an actual controversy." *State ex rel. Miller v. Murray* (1979), 183 Mont. 499, 503, 600 P.2d 1174, 1176. This Court will not pass upon a moot question. *State v. Thompson* (1978), 176 Mont. 150, 153, 576 P.2d 1105, 1107

We therefore decline to address the issue raised in cause number 95-469.

_____
us ice

We concur:

_____

_____

_____

_____
Justices

15