No. 85-344

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

IN THE MATTER OF M.C.

_____

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Terry L. Seiffert, Billings, Montana

For Respondent:

Harold F. Hanser, County Attorney, Billings, Montana

_____

Submitted on Briefs: Dec. 5, 1985

Decided: March 25, 1986

Filed MAR 25 1986

*Ethel M. Harrison*

_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

M.C., respondent below, appeals a Yellowstone County District Court order committing him to the Montana State Hospital. He contends that testimony regarding incidents which occurred prior to an earlier hearing and regarding an evaluation made after that earlier hearing should have been excluded; that insufficient evidence supported his transfer to the Montana State Hospital; and that his commitment should be reversed because there was insufficient evidence to hold him on an emergency basis. We affirm the order committing M.C. and transferring him to the Montana State Hospital.

On May 23, 1985, M.C. rode his bicycle head-on into an automobile. When questioned by a police officer who responded to the call, M.C. said that he had just had a birthday, no one cared or remembered and that he was tired of it all. That afternoon he telephoned the Billings Mental Health Center attempting to contact his counselor who was not available. M.C. told the secretary that he had a loaded gun to his head and had just ridden his bicycle into a car. He then hung up. The police answered a second call on M.C. that same day when he broke a door at his apartment complex.

David Pierce, a psychiatric social worker at the mental health center who was on emergency call that day, asked the police to take M.C. to the emergency room of Billings Deaconess Hospital. At the hospital M.C. told Pierce that he had a death wish and wanted to hurt himself. Although M.C. cooperated with both the police officers and Pierce, a psychiatrist recommended he be restrained based on his medical history. Pierce wrote to the county attorney as a result of his interview with M.C. and recommended that M.C.

2

be committed for treatment of his mental disorder and advised the county attorney that M.C. had been hospitalized on an emergency hold basis by the psychiatrist and at Pierce's request.

On May 24, 1985, a deputy county attorney filed a petition for commitment in accordance with § 53-21-121, MCA. The District Court found probable cause to hold M.C. and, at the initial appearance on May 28, 1985, ordered an evaluation of M.C. in accordance with § 53-21-123, MCA.

On May 29, 1985, the District Court held a final hearing. The court denied M.C.'s motions to dismiss and to continue the proceedings. The evidence presented at the hearing concerned M.C.'s history of threatening and disruptive behavior toward his family; toward his fellow students at Eastern Montana College; toward tenants in his apartment complex; and toward fellow patients at Billings Mental Health Center. The county also presented evidence that M.C.'s behavior posed a threat to himself. After the commitment hearing, the parties stipulated to, and the court ordered, a three-month commitment at the Billings Mental Health Center or another mental health facility in Montana with the agreement that M.C. would follow the recommendations for outpatient treatment.

When M.C. informed Dr. Dohner of the Billings Mental Health Center that he was to be released to the Center, Drs. Dohner, Hague, Nunez and Harr agreed that such treatment would not be successful nor would it be safe to the community. Based upon their opinions, Dr. Harr wrote to the county attorney on May 31, 1985, two days following the commitment order, and requested a hearing on the question of transferring treatment of M.C. from the Center to Montana

State Hospital. This letter served as the basis for the county attorney's motion requesting a hearing on M.C.'s transfer. The District Court ordered a second hearing, held on June 5, 1985, at which time evidence was presented concerning M.C.'s failure to cooperate with medical staff and other patients at the Mental Health Center and the Center's inability to closely monitor his medication. Dr. Dohner testified that Montana State Hospital would be the best place for treating M.C. The District Court ordered M.C.'s transfer to the Montana State Hospital on June 6, 1985.

M.C. presents three issues on his appeal:

(1) Did the District Court err in denying his motions in limine?

(2) Did sufficient evidence support his transfer to Montana State Hospital?

(3) Did the District Court err in denying his motion to dismiss?

Between the initial commitment hearing and the transfer hearing, M.C. filed two motions in limine, which the District Court denied. The first motion requested that, at the transfer hearing, the State be precluded from eliciting testimony based on an evaluation of M.C. made after the commitment hearing. The second motion requested that the State also be precluded from eliciting testimony on incidents that occurred before the commitment hearing. In the first issue, M.C. challenges the denial of both motions.

On the first motion, he contends that §§ 53-21-101 et seq., MCA, provides no authority for using evaluations made after a final commitment hearing in a later transfer hearing. On the second motion, he contends the order of commitment was final as to all events litigated at the first hearing;

4

therefore, none of the earlier events should have been referred to at the transfer hearing. Two statutes refer to transfers to other facilities for treatment. Section 53-21-182, MCA, states:

> At any time during the patient's commitment, the court may, on its own initiative or upon application of the professional person in charge of the patient, the patient, his next of kin, his attorney, or the friend of respondent appointed by the court, order the patient to be placed in the care and custody of relatives or guardians or to be provided outpatient therapy or other appropriate placement or treatment.
> (Emphasis added.)

Section 53-21-130, MCA, concerns the transfer of persons in custody of the department of institutions for purposes other than treatment, to a facility where they can receive treatment. It provides procedural safeguards for the person who is being transferred to a more restrictive environment by limiting the transfer to ten days unless the person voluntarily admits himself or the department follows the involuntary commitment proceedings. Section 53-21-182, MCA, while it permits a court to transfer a patient receiving treatment, does not refer to any procedure for transfer and section 52-21-130, MCA, sets out a transfer procedure only for persons other than those receiving treatment. M.C. v. Department of Institutions (Mont. 1984), 683 P.2d 956, 41 St.Rep. 1242. Neither statute restricts what evidence may be admissible when a transfer hearing is held. Reason dictates that any evidence admissible at a final commitment hearing which is relevant to the transfer should be admissible at the transfer hearing. Such relevant evidence may include the opinions of professional persons, and "overt acts, sufficiently recent in time as to be material and relevant as

5

to the respondent's present condition." Section 53-21-126(2), MCA. Here, the professional person in charge of M.C. asked that M.C. be placed at Montana State Hospital rather than the Mental Health Center because M.C. was a threat to himself and others. Presumably because the requested transfer would be to a more restrictive environment, the court granted a hearing on the request. At that hearing, the State submitted evidence that M.C.'s previous treatment at the Center was unsuccessful; that he had failed to cooperate with the other patients and medical personnel at the Center; and that he had been found seriously mentally ill at the commitment hearing one week earlier. Medical evaluations of M.C. made by professional persons other than the one appointed by the court would have been admissible at the commitment hearing and are relevant to the reason for the transfer request. Thus, they are admissible at a transfer hearing. Similarly, evidence concerning recent overt acts, relevant to whether Montana State Hospital was the appropriate place for treatment, is admissible at a transfer hearing. We hold that the District Court did not err in denying M.C.'s motions to exclude evidence.

In the second issue, M.C. argues that the evidence was not sufficient to warrant his transfer to Montana State Hospital. M.C. and his counsel stipulated to a commitment to the Billings Mental Health Center or "another mental health facility in Montana" on May 29, 1985. The determinative issue then is only whether Montana State Hospital was the least restrictive environment, pursuant to § 53-21-120, MCA. The District Court heard evidence on M.C.'s lack of cooperation in the past in taking prescribed medications; the Center's inability to monitor his medication; M.C.'s

6

explosive behavior which worsens when his medication is at lower levels; and his general inability to cooperate in treatment at the Center. Finally, Dr. Dohner testified that Montana State Hospital was the least restrictive environment in which M.C. could receive the care and supervision he needs. This evidence is sufficient to support the District Court's action in committing M.C. to Montana State Hospital.

The final issue concerns M.C.'s emergency detention at Billings Deaconess Hospital on May 23, 1985, before the District Court found him seriously mentally ill. He contends that under § 53-21-129, MCA, the peace officer makes the initial decision on whether an emergency situation exists and here the officer did not make that decision. M.C. also contends the evidence was insufficient to hold him on an emergency basis, relying on In Re Shennum (Mont. 1984), 684 P.2d 1073, 41 St.Rep. 1148.

Section 53-21-129, MCA, provides in part:

> (1) When an emergency situation exists, a peace officer may take any person who appears to be seriously mentally ill and as a result of serious mental illness to be a danger to others or to himself into custody only for sufficient time to contact a professional person for emergency evaluation. If possible, a professional person should be called prior to taking the person into custody.
>
> (2) If the professional person agrees that the person detained appears to be seriously mentally ill and that an emergency situation exists, then the person may be detained and treated until the next regular business day. . . (Emphasis added.)

Subsection (1) merely permits the officer to take a person into custody for an evaluation; it does not, as M.C. contends, give the officer the authority to decide whether the person should be placed in emergency detention. Under

7

subsection (2), the professional person makes the decision on whether the person appears to be seriously mentally ill and should be placed in emergency detention.

M.C. argues that the evidence was not sufficient to hold him on an emergency basis. As noted above, if the professional person determines that the person is seriously mentally ill and an emergency situation exists, that person may be detained.

> "Seriously mentally ill" means suffering from a mental disorder which has resulted in self-inflicted injury or injury to others or the imminent threat thereof or which has deprived the person afflicted of the ability to protect his life or health. For this purpose, injury means physical injury . . .

Section 53-21-102(14), MCA. An emergency situation is "a situation in which any person is in imminent danger of death or serious bodily harm from the activity of a person who appears to be seriously mentally ill." Section 53-21-102(4), MCA. Imminent threat or danger is evidenced by "overt acts." Section 53-21-126(2), MCA. Overt acts includes behavior such as a threat to take one's life, Matter of Goedert (1979), 180 Mont. 484, 487, 591 P.2d 222, 224; a threat to kill, Matter of J.B. (Mont. 1985), 705 P.2d 598, 602, 42 St.Rep. 1335, 1340; and verbal abuse coupled with aggressive physical action such as being "armed" with a baseball bat, throwing food and tearing sheets off a bed, Matter of F.B. (Mont. 1980), 615 P.2d 867, 869, 37 St.Rep. 1442, 1445. The professional person here had adequate information to believe that M.C. was seriously mentally ill and that a emergency situation existed, requiring M.C.'s detention. M.C telephoned the Mental Health Center and stated he had a loaded gun pointed at his head and that he had just ridden a

8

bicycle into a car. Shortly afterwards, he broke a door at his apartment complex. Later that day, he told the professional person he had a death wish and wanted to hurt himself. Finally, the professional person was aware of M.C.'s medical history. Actual injury need not occur before the statutory requirements are met. Matter of J.B., 705 P.2d at 602, 42 St.Rep. at 1340. Unlike the situation in Shennum, the record is not bare as to why the emergency detention occurred. The evidence here supports the professional person's determination that M.C. required emergency detention. We hold that the District Court correctly denied M.C.'s motion to dismiss.

M.C.'s detention and commitment are affirmed.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

9