JUSTICE NELSON
dissenting.
I concur with our opinion except as to our discussion of Issue 3c, and as to that issue, I respectfully dissent. I conclude that the jury’s finding that Mental Health was not negligent was contrary to the law.
Section 53-21-102, MCA (1987), defines a “professional person” as either a medical doctor or a person who has been certified, as provided for in § 53-21-106, MCA, by the department of institutions. Moreover, § 53-21-105, MCA (1987), provides that “[n]o person may act in a professional capacity as provided for in [Title 53, Chapter 21, Part 1] unless he is a professional person as defined in 53-21-102.”
Section 53-21-129, MCA (1987), which authorizes, under certain limited, defined circumstances, the emergency detention of a person who is seriously mentally ill, is absolutely clear and unambiguous in its mandate that the required evaluation prior to or at the time of detention be conducted by a professional person.
In that regard, it is undisputed that Russell was not a professional person, because she was not certified by the department of institutions and, yet, she was the one who did the only evaluation of Joshua that was ever conducted. The professional person, Harris, did not even see Joshua until the day following his detention, and, then, contrary to our opinion, Harris did not evaluate him; he only observed Joshua through the window of the locked door of the soft cell. Harris’ conclusions that Joshua was seriously mentally ill were based, not on his evaluation, but on Russell’s. There is no question that, on the undisputed evidence presented to the jury, at least §§ 53-21-105, MCA (1987), and 53-21-129(1) and (2), MCA (1987), were violated by Mental Health’s procedure in this case.
Furthermore, no authority is cited for the proposition that, as in this case, the evaluation required to be accomplished by the professional person can, instead, be conducted by a non-certified person who consults by telephone with the professional person. Mental Health’s arguments in favor of that procedure are merely an after-the-fact justification for its failure to comply with the statute. Worse, our sanctioning that procedure sets a very dangerous precedent, indeed, *257 and encourages mental health care providers to ignore those legislative mandates designed to insure that emergency detention is authorized by a person to whom the State has, by its certification process, entrusted the responsibility for making such important decisions.
Presumably, a person is not certified because he/she does not have the knowledge, training, experience or expertise to make the same decisions and conclusions as a certified person. Presumably, a certified person is required to make critical judgment calls because of his/her greater knowledge, training, experience and expertise. Presumably, if the procedure used in this case for the emergency evaluation and detention of this seriously mentally ill juvenile were acceptable, the legislature would have written the statutes at issue to so provide.
Unfortunately, our decision on this issue stands in stark contrast to our previous cases which have strictly construed the requirements of § 53-21-129, MCA, in favor of the detained person. See, Matter of Shennum (1984), 210 Mont. 442, 684 P.2d 1073, (record did not evidence the existence , of an emergency justifying commitment under § 53-21-129); Matter of M.C. (1986), 220 Mont. 437, 716 P.2d 203, (under § 53-21-129, MCA, it is the professional person, not the police officer who takes the person into custody, who determines whether the person is seriously mentally ill and should be placed into emergency detention); Matter of E.P. (1990), 241 Mont. 316, 787 P.2d 322, (failure to release involuntarily confined patient on the day after she was committed under § 53-21-129, MCA, or to file findings with the county attorney as required by the statute, deprived the person of due process).
Mental Health clearly violated duties and the standard of care imposed by the statutes at issue and, in my view, was negligent as a matter of law. Perhaps if Mental Health had simply followed the law, this whole tragic set of circumstances would not have been set in motion.
Accordingly, I respectfully dissent from our decision on Issue 3c.
JUSTICE HUNT JOINS in the foregoing dissent.