No. 95-092

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

FILED

NOV 14 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

IN RE T.L.,

Respondent and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Terry L. Seiffert, Attorney at Law,
Billings, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General,
Micheal S. Wellenstein, Assistant Attorney
General, Helena, Montana

Dennis Paxinos, Yellowstone County Attorney,
Susan P. Watters, Deputy County Attorney,
Billings, Montana

Submitted on Briefs: August 17, 1995

Decided: November 14, 1995

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

On October 14, 1994, the Yellowstone County Attorney petitioned the District Court for the Thirteenth Judicial District in Yellowstone County pursuant to §§ 53-21-129 and 121, MCA, to detain T.L. and commit him to a mental health facility. The District Court ordered that T.L. be detained pending a hearing which was held on October 18, 1994. Following that hearing, T.L. was involuntarily committed to the Montana State Hospital at Warm Springs. He appeals from the District Court's order of commitment. We affirm the District Court.

The issues on appeal are:

1. Was T.L. illegally detained in violation of § 53-21-129, MCA?

2. Was § 53-21-141(1), MCA, violated when the District Court admitted Dr. Lowell Stratton's October 14, 1994, report?

3. Was there sufficient evidence to support the District Court's finding that T.L. was seriously mentally ill?

The petitioner, T.L., voluntarily admitted himself to Deaconess Psychiatric Center for treatment on October 8, 1994. On October 14, 1994, T.L.'s physician, Dr. Lowell Stratton, signed and

2

filed a request for involuntary commitment with the County Attorney. The request was based upon a diagnosis of paranoid schizophrenia. Dr. Stratton included in the request a letter outlining his evaluation of T.L. and recommendation for commitment.

T.L. waived his initial appearance after being advised of his rights by counsel. The court then ordered an evaluation of T.L. and scheduled a hearing for October 18, 1994.

At the hearing, Dr. Stratton testified that, in his opinion, T.L. suffered from paranoid schizophrenia and that T.L. believed he was possessed by an evil spirit and had put a gun to his head about one month earlier at the direction of the spirit. Dr. Stratton testified that T.L. continued to have the delusional belief in the evil spirit and intermittent auditory hallucinations, and that in his opinion, T.L. could be a danger to himself or others.

T.L. testified that although he was possessed by an evil spirit, the incident with the gun occurred over one year ago and that since then he had been able to ward off the evil spirit through religion. T.L. also testified that he did not believe commitment was necessary and that he was concerned about side effects from drugs which Dr. Stratton had prescribed.

Following the hearing, the District Court filed its order committing T.L. to the custody of the Montana State Hospital at Warm Springs.

T.L. has since been conditionally released from the Montana State Hospital.

Was T.L. illegally detained in violation of § 53-21-129, MCA?

We review a District Court's conclusions of law to determine whether they are correct. *In re J.L.S.* (1988), 234 Mont. 201, 206, 761 P.2d 838, 841.

Section 53-21-129(1) and (2) MCA, applies to emergency commitments and provides:

> (1) When an emergency situation exists, a peace officer may take any person who appears to be seriously mentally ill and as a result of serious mental illness to be a danger to others or to himself into custody only for sufficient time to contact a professional person for emergency evaluation. If possible, a professional person should be called prior to taking the person into custody.
> (2) If the professional person agrees that the person detained appears to be seriously mentally ill and that an emergency situation exists, then the person may be detained and treated until the next regular business day. At that time, the professional person shall release the detained person or file his findings with the county attorney who, if he determines probable cause to exist, shall file the petition provided for in 53-21-121 through 53-21-126 in the county of the respondent's residence. In either case, the professional person shall file a report with the court explaining his actions.

(Emphasis added.)

T.L. maintains that the requisite emergency situation did not exist because no evidence of any imminent threat of death or serious bodily injury was present.

T.L. cites *In re Shennum* (1984), 210 Mont. 442, 684 P.2d 1073, in support of his position.

In *Shennum*, Alan Shennum, armed with a loaded semiautomatic pistol, seated himself in the public section of the chambers of the Missoula City Council just before a scheduled council meeting.

4

*Shennum*, 684 P.2d at 1075. After he was discovered, apprehended, questioned, and relieved of his weapon by local police, he was released. The next morning, Shennum went to the police station to pick up his gun. He was detained there and examined by a Missoula psychiatrist. Later that day, he was transferred to the mental health unit of a local hospital. A petition for commitment in the state mental hospital was filed the following day. *Shennum*, 684 P.2d at 1076.

The court held that the record failed to demonstrate a finding by the psychiatrist of an emergency situation justifying Shennum's detainment at the police station, and reversed his commitment. *Shennum*, 684 P.2d at 1077.

The facts in *Shennum* differ from those in this case. Shennum was originally detained pursuant to § 53-21-129(1), MCA, without the recommendation of a professional person. Unlike *Shennum*, T.L. was detained at the request of a professional person. Pursuant to § 53-21-129(2), MCA, the determination of whether a person appears to be seriously mentally ill and an emergency situation exists is left to the professional person whose request for emergency detainment is sufficient. *See In re M.C.* (1986), 220 Mont. 437, 443, 716 P.2d 203, 207.

Dr. Stratton evaluated T.L. after his voluntary admission to the hospital and found that T.L. suffered from paranoid schizophrenia with delusions and hallucinations, that he was hostile if challenged, and that he had, only a month prior to the

5

hearing, put a gun to his head. In addition to the gun incident, Dr. Stratton testified at the hearing that T.L. had a physical altercation with another person in a stairwell when, according to T.L., an evil spirit was in him. Dr. Stratton also testified that T.L. continued to have the delusional belief in the evil spirit and intermittent auditory hallucinations and that in his opinion, T.L. could be a danger to himself or others.

We need only determine whether the professional person here had adequate information to believe that T.L. was seriously mentally ill and that an emergency situation existed requiring T.L.'s detention. Based upon Dr. Stratton's testimony, we conclude that he did have adequate information to believe that T.L. was seriously mentally ill and that an emergency situation existed requiring T.L.'s detention. Moreover, on October 14, the same day of T.L.'s initial detainment, the county attorney filed a petition for commitment. The requirements of § 53-21-129(2), MCA, were, therefore, satisfied.

We hold that sufficient evidence supported T.L.'s emergency detention pursuant to § 53-21-129, MCA.

### ISSUE 2

Was § 53-21-141(1), MCA, violated when the District Court admitted Dr. Lowell Stratton's October 14, 1994, report?

We review evidentiary rulings to determine if the district court abused its discretion. *State v. Passama* (1993), 261 Mont. 338, 341, 863 P.2d 378, 380.

6

T.L. alleges that communications made by him to the physician who sought his commitment were privileged pursuant to § 53-21-141, MCA, and therefore, that Dr. Stratton's report should not have been admitted into evidence.

Section 53-21-141(1), MCA, provides as follows:

Unless specifically stated in an order by the court, a person involuntarily committed to a facility for a period of evaluation or treatment does not forfeit any legal right or suffer any legal disability by reason of the provisions of this part except insofar as it may be necessary to detain the person for treatment, evaluation, or care. All communication between an alleged mentally ill person and a professional person is privileged under normal privileged communication rules unless it is clearly explained to the person in advance that the purpose of an interview is for evaluation and not treatment.

However, there is nothing in Dr. Stratton's October 14, 1994, report which repeats or even refers to any communications by T.L. to Stratton. The report simply contains Dr. Stratton's diagnosis and his recommendation for treatment. Therefore, its admission did not violate § 53-21-141(1), MCA.

T.L. asserts in his reply brief that Dr. Stratton's report should not have been used because he neither conducted a formal evaluation nor prepared and submitted a report after the court ordered an evaluation. However, T.L. failed to raise compliance with § 53-21-123, MCA, as an issue on appeal. The State has not had an opportunity to respond to this argument, and we will not consider arguments or issues raised for the first time in a reply brief.

We conclude that the District Court did not abuse its discretion when it admitted Dr. Stratton's report into evidence.

7

Was there sufficient evidence to support the District Court's finding that T.L. was seriously mentally ill?

On appeal, this Court will not disturb the district court's findings of fact unless they are clearly erroneous. *In re E.P.* (1990), 241 Mont. 316, 319, 787 P.2d 322, 325; Rule 52(a), M.R.Civ.P. When reviewing conclusions of law, this Court will merely determine if the decision below was correct. *In re J.L.S.* (1988), 234 Mont. 201, 206, 761 P.2d 838, 841.

Montana's procedures concerning petitions for involuntary commitment of a person at a mental health facility are set forth at §§ 53-21-121 to -127, MCA. Section 53-21-126(2), MCA, provides:

> The standard of proof in any hearing held pursuant to this section is proof beyond a reasonable doubt with respect to any physical facts or evidence and clear and convincing evidence as to all other matters, except that mental disorders shall be evidenced to a reasonable medical certainty. Imminent threat of self-inflicted injury or injury to others shall be evidenced by overt acts, sufficiently recent in time as to be material and relevant as to the respondent's present condition.

Before a person can be civilly committed in accordance with Montana Code Annotated Title 53, Chapter 21, the court must make a determination that the person is seriously mentally ill. Section 53-21-102(15), MCA, defines "seriously mentally ill" and provides in part:

> "Seriously mentally ill" means suffering from a mental disorder which has resulted in self-inflicted injury or injury to others or the imminent threat of injury or which has deprived the person afflicted of the ability to protect the person's life or health. For this purpose, injury means physical injury.

8

T.L. contends that the District Court erred when it found him seriously mentally ill because the record does not demonstrate an overt act. T.L. asserts that the only overt act he committed, putting a gun to his head at the request of an evil spirit, cannot be considered because it occurred too far in the past to be relevant.

There is a conflict in the evidence concerning when T.L. put the gun to his head. Dr. Stratton testified that he was told that the gun incident happened only a month prior to the hearing, while T.L. testified that it occurred over one year ago. The "weight of the evidence and the credibility of the witnesses are exclusively within the province of the trier of fact." *State v. Bower* (1992), 254 Mont. 1, 8, 833 P.2d 1106, 1111.

Dr. Stratton testified that T.L. struggles daily with the evil spirit and that his refusal to take his medication would exacerbate T.L.'s paranoid schizophrenia and he would then be an imminent threat to himself and to others.

A review of the record indicates that the District Court's finding that T.L. was "seriously mentally ill," as set forth in § 53-21-102(15), MCA, was supported by sufficient evidence. We hold that the Court did not err when it ordered T.L.'s involuntary commitment to a mental health facility.

T.L.'s detention and commitment are affirmed.

_____
Justice

9

We concur:

_____
Chief Justice

_____

_____

_____
Justices

10